UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

ADRIAN EGUIA,

        Plaintiff,

   v.                                CAUSE NO. 1:22-CV-168-DRL-SLC

DAVID GLADIEUX,

        Defendant.

OPINION AND ORDER

Adrian Eguia, a prisoner without a lawyer, filed a complaint against Allen County Sheriff David Gladieux seeking damages for being held in the unconstitutional conditions of confinement at the Allen County Jail identified in *Morris v. Sheriff of Allen County*, No. 1:20-CV-34-DRL, 2022 WL 971098 (N.D. Ind. Mar. 31, 2022). ECF 1. The court determined the complaint did not state a claim because Mr. Eguia did not allege how he was personally injured by the conditions. ECF 5. Mr. Eguia has now filed an amended complaint about several different aspects of his confinement. ECF 11.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

First, Mr. Eguia alleges he spent more than two years—765 days to be exact—at the Allen County Jail in overcrowded conditions. Upon intake, he says that for seven days, from June 12-19, 2020, he was not provided with any hygiene materials or allowed to shower. Then, he was moved to quarantine block 6-A, where he was placed in an overcrowded 6-person cell for fourteen days. In that time, he claims he had to sleep on the floor near the toilet. In addition, he contends he was allowed only a five-minute shower every three days, and was not given the opportunity to spend an hour a day outside of his cell.

After his quarantine period ended, Mr. Eguia alleges he was placed in 6-C Block. Here, he claims he was the third person in a two-person cell and again had to sleep on the floor near the toilet. He says he would get woken up at night when a cellmate had to use the toilet. Mr. Eguia alleges that throughout his entire two-year detention, he was not offered recreation. Mr. Eguia emphasizes how stressful these conditions were. He says it is hard to be going through a criminal trial with no way to escape your problems or to "shake off bad energy" because the crowded conditions allow for no privacy. ECF 11 at 3.

Because Mr. Eguia was a pretrial detainee while at the Allen County Jail, his rights arise under the Fourteenth Amendment. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that 'amount to punishment.'" *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (citation omitted). To state a claim that a jail policy violates the Fourteenth

2

Amendment, a plaintiff must allege that a resulting pretrial condition "is 'imposed for the purpose of punishment,' or . . . the condition 'is not reasonably related to a legitimate goal—if it is arbitrary or purposeless . . ..'" *Id.* at 856 (quoting *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979). Courts consider whether "the challenged governmental action is not rationally related to a legitimate governmental objective or [whether] it is excessive in relation to that purpose." *Id.* (quoting *Kingsley*, 576 U.S. at 398).

Overcrowding, on its own, does not state a constitutional claim; instead the court must look to the effects the overcrowding has on the conditions of confinement. *See Bell v. Wolfish*, 441 U.S. 520, 541 (1979) ("While confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment, nothing even approaching such hardship is shown by this record."); *see also Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008) (after determining that the triple-celling of pretrial detainees was rationally related to managing an overcrowded facility, the court turned to "whether these conditions cause inmates to endure such genuine deprivations and hardship over an extended period of time, that the adverse conditions because excessive in relation to the purposes assigned to them" (quotation marks omitted)). For example, overcrowding could lead to deprivations of essential food, medical care, or sanitation, cause an increase in violence, or result in other intolerable prison conditions. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981).

3

Here, Mr. Eguia plausibly alleges that spending two years in overcrowded conditions, coupled with the lack of recreation, could amount to punishment. *Cf. James v. Pfister*, 708 F. Appx. 876, 879 (7th Cir. 2017) ("Our decisions are clear that preventing inmates from exercising for prolonged periods may violate the Eighth Amendment."); *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) ("An adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem."). The psychological stress he endured can be considered an injury for purposes of 42 U.S.C. § 1983. *See Mulvania*, 850 F.3d at 855-58 (allegation that being denied underwear was "humiliating" stated cognizable harm under Fourteenth Amendment). A lack of a physical injury, however, may affect the damages he may ultimately recover. *See Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012) ("[Under 42 U.S.C. § 1997e(e),] a prisoner cannot obtain compensatory damages without proving a physical injury."). Nevertheless, because Mr. Eguia describes a practice or custom of denying recreation to inmates living in overcrowded conditions, he may proceed against Sheriff Gladieux in his official capacity on a Fourteenth Amendment claim. *See Budd v. Motley*, 711 F.3d 840, 843-44 (7th Cir. 2013) (concluding plaintiff stated only an official capacity claim concerning alleged poor jail conditions because he "describe[ed] a municipal practice or custom in running the jail, rather than the Sheriff's personal conduct").

Next, Mr. Eguia complains about limitations on his ability to practice his religion at the jail. Inmates retain their right under the First Amendment to practice their religion. *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005). "The Free Exercise Clause

4

prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citations omitted). A prison practice that imposes a substantial burden on the free exercise of religion "may be justified if it is reasonably related to legitimate penological interests." *Kaufman*, 733 F.3d at 696 (internal quotation marks and citation omitted). The Religious Land Use and Institutionalized Persons Act (RLUIPA) offers broader protections than the First Amendment by prohibiting substantial burdens on an inmate's religious exercise unless that burden serves a "compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see also Cutter v. Wilkinson*, 544 U.S. 709 (2005).

Here, Mr. Eguia alleges that one year, jail staff ended his observance of Ramadan a day early and that the jail did not offer any religious services during his two-year detention. There is no indication that the Sheriff was personally involved in carrying out the observance of Ramadan, thus he cannot be held responsible for the actions of individual jail staff in ending Ramadan early. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (personal involvement is necessary for individual liability under 42 U.S.C. § 1983). However, it can be reasonably inferred that the lack of religious services was a policy or practice at the jail, so Mr. Eguia may proceed on claims under the First Amendment and RLUIPA against Sheriff Gladiuex in his official capacity for not providing religious services at the jail.[1]

---

[1] Mr. Eguia is no longer at the Allen County Jail. ECF 9. Therefore, any claim for injunctive relief would be moot. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred

5

Mr. Eguia's remaining allegations cannot proceed because he complains of the actions of individual jail staff members with no personal involvement of the Sheriff or connection to jail policy. He complains that an unnamed confinement officer did not follow the mask mandate from June through November 2020, the worst part of the COVID-19 pandemic, that a correctional officer came into work while sick and spread the virus, and that he caught COVID-19 twice but was refused any treatment. Finally, Mr. Eguia alleges that the jail doctor improperly discontinued his special diet tray, and he had to supplement meals with items from commissary to replace the meal items he could not eat due to allergies. None of these allegations state a claim against the Sheriff.

For these reasons, the court:

(1) GRANTS Adrian Eguia leave to proceed against Sheriff David Gladieux in his official capacity for monetary damages for spending more than two years at the Allen

---

to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred."). RLUIPA claims against state officials are limited to injunctive relief, and not damages. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011). This reasoning, based on States' sovereign immunity under the Eleventh Amendment, has not yet been applied to RLUIPA claims against county officials. *Cf. DeGenova v. Sheriff of DuPage Cnty*, 209 F.3d 973, 975 (7th Cir. 2000) ("[T]he Eleventh Amendment does not extend to counties and similar municipal corporations."). Similarly, RLUIPA does not permit a suit against an individual for money damages because the statute was enacted under Congress' spending power and an individual does not receive federal funds. *See Nelson v. Miller*, 570 F.3d 868, 886-87 (7th Cir. 2009), *abrogated on other grounds by Jones v. Carter*, 915 F.3d 1147, 1149-50 (7th Cir. 2019). This, too, does not apply to a county. Thus, Mr. Eguia may proceed on a claim for damages, subject to the limitations on damages in the Prison Litigation Reform Act of 1996 ("PLRA"). 42 U.S.C. § 1997e(e). *See Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008) (noting that PLRA provision limiting damages applies to RLUIPA claims); *Pearson v. Welborn*, 471 F.3d 732, 744-45 (7th Cir. 2006) (allowing only nominal damages award to inmate who prevailed at trial on a First Amendment retaliation claim because he did not suffer physical or other injury as required by the PLRA for compensatory damages).

County Jail in overcrowded conditions without recreation, starting in June 2020, in violation of the Fourteenth Amendment;

(2) GRANTS Adrian Eguia leave to proceed against Sheriff David Gladieux in his official capacity for monetary damages for being denied religious services at the Allen County Jail for more than two years, starting in June 2020, in violation of the First Amendment and RLUIPA;

(3) DISMISSES all other claims;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sheriff David Gladieux at the Allen County Jail, with a copy of this order and the complaint (ECF 11);

(5) ORDERS the Allen County Jail to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sheriff David Gladieux to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

November 8, 2022                  *s/ Damon R. Leichty*
                                                        Judge, United States District Court